## ADVISORY BOARD OF HARRISON TOWNSHIP v. STATE, EX REL. SMITH.

[No. 21,089.   Filed May 26, 1908.]

1. MANDAMUS.—*Change of Venue.—Advisory Boards.—Change of. —Jurisdiction.—Motions to Quash Writ.*—Where an action in mandamus was brought against a township advisory board, and such board secured a change of venue, the terms of its members expiring, their successors' motion to quash a writ served upon them, on the ground that the court in the county to which the venue had been changed had no jurisdiction, should be overruled, such board constituting one continuous corporate entity regardless of change of membership.  pp. 443, 447.

2. SCHOOLS.—*Joint School Districts and Schoolhouses.—Erection of.*—Prior to 1899, township trustees in adjoining townships, had the discretionary right, subject to an appeal to the county superintendent, to establish joint school districts, and to construct joint schoolhouses; and such discretion was not modified by the advisory board law, except that it became necessary thereunder for the advisory boards to make an appropriation therefor.  p. 444.

3. SAME.—*Appropriations.—Necessity.—Special Sessions of Advisory Boards.*—Township advisory boards may, at special sessions, and without finding and entering of record a necessity therefor, authorize their trustees to borrow money to construct a joint schoolhouse as authorized by §6618 Burns 1908, Acts 1903, p. 431.  p. 445.

4. SAME.—*Joint Schoolhouses.—Establishment.—Authority.*—Under §6618 Burns 1908, Acts 1903, p. 431, the consent necessary to authorize the construction of a joint schoolhouse by two adjoining districts in adjacent townships, is that of a majority of the patrons of both districts jointly.  p. 446.

5. SAME.—*Joint Schoolhouses.—Favorable Petition for Establishment of.—Advisory Boards.—Appropriations.*—Where a majority of the school patrons of each of two adjoining districts in adjacent townships petition for the construction of a joint schoolhouse, the township advisory boards of such townships are under the duty of appropriating the necessary money therefor.  pp. 446, 448.

6. OFFICERS.—*Duties.*—The legislature creating an office, may impose upon the officers the manner of the discharge of their duties.  p. 447.

7. MANDAMUS.—*Return.—Officers.—Successors.*—Returns to a writ of mandate, made by members of a township advisory board, as officers, after their successors have been elected and qualified, are wholly ineffective.  p. 448.

8. CONSTITUTIONAL LAW.—*Statutes.—Titles.—Schools.*—The title of the act of 1903 (Acts 1903, p. 43) in form: "An act concerning

the establishment of new school districts, and the erection and maintenance of schoolhouses therein and declaring an emergency," is not too broad to cover the subject of the construction of a joint schoolhouse, and does not violate Art. 4, §19, of the Constitution, providing that "every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." p. 449.

9. CONSTITUTIONAL LAW. — *Statutes.* — *Independent.*—*Amendatory.* —A statute, not appearing on its face to be amendatory, does not violate the Constitution (Art. 4, §21), providing that "no act shall be * * * amended by mere reference to its title; but the * * * section amended shall be set forth and published at full length," because it expressly refers to existing statutes for construction or modes of procedure, and though it modifies existing statutes by implication. p. 450.

From Howard Circuit Court; *J. F. Elliott,* Judge.

Action by the State of Indiana, on the relation of Zadoc Smith, against the Advisory Board of Harrison Township. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Cox & Andrews,* for appellant.
*Bailey & Cole,* for appellee.

HADLEY, J.—Action by appellee for a peremptory writ of mandate directed against appellant, requiring said board to authorize the trustee of Harrison township to borrow money to be expended in the construction of a joint schoolhouse, under the provisions of §§6617, 6619-6622 Burns 1908, §§4512, 4513 R. S. 1881, Acts 1901, p. 53, §§1-3.

A petition for a writ was filed in the Miami Circuit Court September 17, 1906, and on the same date an alternative writ was issued and served on the advisory board, then composed of Rose, Stitt and Graham. It is alleged in the petition, in substance, that school district No. 1 in Clay township, and school district No. 2 in Harrison township, in Miami county, are adjoining districts, and on March 17, 1905, a majority of the school patrons residing in said school districts presented to, and filed with, the respective trustees of said townships petitions in writing (the relator being one of said petition-

ers) praying for the creation of a new school district, and
the construction of a new joint schoolhouse in the village of
McGrawsville, the principal street of said village being the
dividing line between said school districts, for the better ac-
commodation of the patrons and children of school age re-
siding in said districts. The petition presented is set out,
and it avers that a necessity exists for the establishment of
said joint school at a cost not to exceed $3,000. It is then
alleged that the trustees on the receipt of said petition gave
notice of the time and place for a meeting of the patrons of
said adjoining districts with the trustees, to consider the ad-
visability and necessity for such a joint school district, by
posting said notice in four public places in each of said town-
ships for more than ten and less than thirty days prior to
said meeting; that at the meeting the trustee of Clay town-
ship voted to grant said petition, and the trustee of Harrison
township voted against it; that the petition being thus
denied and not granted, the petitioners on March 30, 1905,
appealed from the action of the trustees to the county super-
intendent, who set April 4 for a hearing of said appeal, on
which day the petitioners and the school patrons of said dis-
trict who are opposed to the granting of said petition ap-
peared and presented their case, and, on being fully advised,
said superintendent found that a necessity existed for the
establishment of said joint district school and entered on
record, and transmitted to each of said trustees a final order
granting the prayer of said petition, and directing said trus-
tees to proceed to carry it out in the manner provided by
law; that the trustees thereupon, acting jointly, and in pur-
suance of said order, agreed upon a building to cost, includ-
ing the lot, not exceeding $2,500, and procured an option on
a site for said joint schoolhouse in the village of McGraws-
ville, and apportioned the expense between them as directed
by statute, the share thus apportioned to Harrison township
being $1,059.33; that the Advisory Board of Clay Town-
ship had duly authorized the trustee of that township to bor-

row enough money to defray the share of expense allotted to Clay township, and the trustee of that township was ready and willing to proceed in carrying out the the grant made upon said petition.   It is also alleged that an emergency exists for the procurement of the site and the erection of the joint schoolhouse; that the trustee of Harrison township has no money on hand, or that will come into his hands during the year, belonging to the special school fund of his township; that it is necessary to borrow the sum of $1,059.33 to meet the township's share of the expense; that Stitt, Rose and Graham are the duly elected, qualified and acting members of the Advisory Board of Harrison Township; that said board at its regular annual meeting held on September 4, 1906, though requested, refused to make any appropriation or tax levy to meet the share of said expense allotted to Harrison township; that on the same day, but after the board's adjournment, the trustee served on each of the members a notice calling upon and requiring them to meet in special session at the residence of said trustee, on September 8, 1906, at 1 o'clock p. m., for the purpose of giving authority to said trustee to borrow the sum necessary to pay the township's allotment; that Graham was the only one that appeared; that Stitt and Rose absented themselves to prevent the accomplishment of the object of said special meeting; that the trustee of Harrison township is willing, but unable, to proceed further in the execution of the order of said county superintendent without an appropriation, or without authority from the advisory board to borrow money. Prayer that a mandate issue requiring said advisory board to meet in special session at a time fixed, and granting said trustee authority to borrow enough money to enable him to obey the order of the county superintendent.   An alternative writ was issued embodying the same facts.

The venue was then changed to the Howard Circuit Court. After the change the official terms of Rose, Stitt and Graham expired, and Stineman, Gerhart and Graff were duly

elected and qualified as their successors. After the new members came in, to wit, January 8, 1907, the plaintiff filed a supplemental complaint to which the new members were made parties, upon which an alternative writ was issued and served upon each member of the new board. It is alleged in the supplemental complaint that since the commencement of the action the official terms of Rose, Stitt and Graham had expired, and, at the November election, 1906, Stineman, Gerhart and Graff had been duly elected, had qualified, and, except Graff, who had died, were then acting as the Advisory Board of Harrison Township; that since the election of the new board the trustee of Harrison township has served on each member thereof a notice in writing to convene in special meeting at a time and place named, for the purpose of giving said trustee authority to borrow money for the reason and purpose named in the notice to the former board; that the new board met pursuant to said notice, and entered upon its record the following minute: "We, the undersigned board, refuse to authorize the trustee to borrow money for said purpose." It is further averred that no successor to Graff has been appointed. Prayer as in the original petition.

Stineman and Gerhart appeared specially, and moved to quash the writ because the Howard Circuit Court had no jurisdiction to issue the writ against the Advisory Board of Miami County. The motion to quash was correctly overruled. Stitt, Rose and Graham, composing the old board, upon the expiration of their official terms, and the election, qualification and induction of their successors into office, became *functus officio*—officially dead. The township advisory board is a continuing office. As a legal entity it never ceases or changes, except by legislative enactment. It was the Advisory Board of Harrison Township in Miami county, and not the individuals representing it, that requested the court to change the venue of the cause from the Miami Circuit Court to the Howard Circuit Court, and while pending in the latter court, when Stitt, Rose and

Graham went out, and Stineman, Gerhart and Graff went into office, as members and representatives of the board, it remained the same board, still subject to the jurisdiction it had invited. The new members assumed the office impressed with all the legal duties and obligations that rested upon the advisory board as a board, and were bound to know and to abide by the act induced by said board. *Wood* v. *State, ex rel.* (1900), 155 Ind. 1, and authorities collated; 2 Dillon, Mun. Corp. (4th ed.), §884; *State, ex rel.,* v. *Board, etc.* (1904), 162 Ind. 580.

Each of the defendants demurred separately to the complaint and alternative writ for insufficiency of facts and want of jurisdiction of the person and of the subject-matter. Many minor objections were made to the complaint. Chief among them are: (1) It does not show that a proper petition was presented to the trustee of Harrison township; (2) it does not show that the trustee of Harrison township consulted with the advisory board of said township with respect to the plan and cost of the joint schoolhouse; (3) it is not alleged that the advisory board found that it was indispensably necessary to borrow funds for the erection of the schoolhouse.

It is alleged in the petition and writ that the trustees of the townships named had jointly, by agreement, selected a site in the village of McGrawsville, and had agreed upon the erection of a joint schoolhouse thereon to cost, including the site, $2,500.

Before the passage of the advisory board law (§§9590-9602 Burns 1908, Acts 1899, p. 150, Acts 1901, p. 415, Acts 1907, p. 615), township trustees of adjoining townships had discretionary power to establish joint school districts and to build joint schoolhouses when petitioned for by school patrons residing in the territory (§§6617, 6620, *supra,* and §5920 Burns 1894, §4444 R. S. 1881), subject to an appeal to the county superintendent (§6667 Burns 1908, §4537 R. S. 1881), and to decide

upon the location, plan and maximum cost of such building. Section 5920, *supra,* as amended (Acts 1901, p. 514, §6410 Burns 1908). The discretion thus vested in township trustees was not in any way limited or modified by the act of 1899, *supra,* except that under the latter law the required expenditure from the township treasury must first be sanctioned by the board in the form of an appropriation, and no indebtedness therefor can be imposed upon the township without previous authority from the board. §9590 Burns 1908, Acts 1899, p. 150, §1, and §9595 Burns 1908, Acts 1901, p. 415, §1. So far, however, as the location and character of the schoolhouse are concerned, the advisory board acts as counsellor only, and the trustee is controlling so long as he acts within the appropriation actually made or authorized, and upon a bid that has had the approval of the board. *Advisory Board, etc.,* v. *State, ex rel.* (1905), 164 Ind. 295.

The provision contained in §9595, *supra,* for a finding by the board of the existence of a public necessity for the improvement, does not apply in all cases, and does not 3. apply in this case. The facts set forth in the complaint and alternative writ make a case squarely within the act of March 10, 1903 (Acts 1903, p. 431, §6618 Burns 1908), which we here set out:

"Section 1.
That whenever a majority of the school patrons of two or more adjoining school districts, located in two or more adjacent townships, may heretofore have petitioned, or whenever they may hereafter petition, in substantial compliance with the provisions of section one of an act of the General Assembly of the State of Indiana, in force March 6, 1877, being §6001 Burns Revised Statutes 1901, to the trustees of said townships for the establishment of a new school district, and the erection of a joint schoolhouse for a joint or joint graded school, at the place named in said petition, for the accommodation of the school children residing in said school district, and if said trustees shall have granted or may hereafter grant, the prayer of said petition, or if an appeal may have been taken, or may hereafter be taken, to the coun-

ty superintendent, from the decision of said trustees, refusing to grant the prayer of said petition, under the provisions of §6028 Burns Revised Statutes 1901, and if on such appeal said superintendent may have granted, or may hereafter grant, the prayer of said petition, then, in either of such events, an emergency shall thereby exist for the procurement of a site and the erection of such schoolhouse at the place named in said petition, and for the expenditure of the money necessary to procure said site and erect such schoolhouse, as contemplated by §8085f Burns Revised Statutes 1901, and if there is not sufficient money on hands for the purpose, the trustees and the advisory boards of such townships shall proceed to raise the money necessary to meet such emergency, as provided by said section, and shall also procure the necessary site for the erection of said schoolhouse and erect and maintain the same as provided by law.''

It will be observed that the act embraces only instances where it is shown that the establishment of a joint school has been petitioned for by a majority of the school patrons of two or more adjoining districts in adjacent townships. The requirement is that the petition must be signed by a majority of the patrons of the two districts, and not by a majority of each district, as contended by appellant.

The act evidently rests upon the theory that when a majority of the patrons residing within the territory of the proposed new district, express, through a petition, a desire for a joint school, that expression shall be accepted as conclusive evidence that an emergency existed for the procurement of a site and the erection thereon of a joint schoolhouse at the place named in the petition. It assumes that the patrons have the right to determine for themselves what they need in the way of a joint school. At all events the language of the statutes is plain, and we see no reason why the legislature may not, in this way, declare what facts shall operate to impose upon advisory boards and township trustees a peremptory duty to proceed in the performance of any official act pertaining to the office. The power

that creates an office, and defines the duties thereof,
6. may also fix the terms upon which such duties shall be exercised. The facts averred in the complaint bring the case clearly within the act of 1903, *supra,* and we therefore hold the petition sufficient to support the action.

When the new members of appellant were brought in on the supplemental complaint, the board, and each member thereof, filed a plea in abatement, setting up, in ef-
1. fect, that when summoned the board and each member thereof was, and still is, a resident of Miami county, and, as now constituted, the board had never changed, nor consented to change, the venue of the cause from the Miami Circuit Court, and said cause is not rightfully within the jurisdiction of the Howard Circuit Court. To this answer the court sustained a demurrer. The ruling was correct, if for no other reason than that given above in disposing of the same defendant's motion to quash the writ. Thereupon the old board, Rose, Stitt and Graham, as ex-members of the advisory board, and the new board, and Stineman and Gerhart, the members thereof, filed separate returns to the alternative writ issued against them as constituting both the old and the new boards, in substance the same, and to the effect that at the November election, 1906, Stineman, Gerhart and Graff had been duly elected, had qualified, and except Graff, who had died, were then acting as the Advisory Board of Harrison Township; that those defendants had not since November —, 1906, held the office as members of said board; that a majority of the patrons of school district No. 2 in Harrison township did not sign a petition for a joint school at McGrawsville; that the trustee of said township was opposed to said joint school; that the county superintendent ordered the location and construction of the joint schoolhouse against the remonstrance of a majority of the school patrons residing in said district No. 2; that there is no emergency for the construction of said joint schoolhouse; that there are no more pupils in district No. 2 than can con-

veniently be accommodated and taught at the schoolhouse therein; that the location of a joint schoolhouse at McGrawsville will take a number of pupils from No. 2 school and necessitate its abandonment; that no emergency exists for the building of a joint schoolhouse; that it is not indispensably necessary to borrow money for the purpose of building a joint schoolhouse at McGrawsville.

To each of these returns the relator's demurrer for insufficient facts was sustained, and, the defendants refusing to plead further, it was adjudged that a peremptory writ of mandate issue to Stineman and Gerhart, as constituting the Advisory Board of Harrison Township, commanding them, as such board, to authorize the trustee of said township to borrow, in some manner provided by law, the sum of $1,059.33 to be used for the purpose prayed for.

The action of the court in sustaining a demurrer to each of these returns was clearly right. Stitt, Rose and Graham had for weeks been out of the case. They were never in court as individuals, and as officers representing the Advisory Board of Harrison Township they ceased to exist when their rightful successors were inducted into the office. Beyond the right to call the court's attention to their substitution they had no standing in court, and could not have been called upon for a further return, or to perform the mandate prayed for, because destitute of power to do so. The character therefore of their respective returns was unimportant. *Schrader* v. *State, ex rel.* (1901), 157 Ind. 341.

On the day the return to the alternative writ was made Stineman and Gerhart, constituting the new board, were the only persons qualified to make a return. The return of the latter makes no effort to justify the refusal to authorize the loan under the statute of 1903. Under this statute it was not material, as we have shown, that a majority of the patrons of school district No. 2 of Harrison township did not sign the petition for the school; nor ma-

terial that the trustee of said township was opposed to the joint school; nor material that the county superintendent ordered the establishment of a joint school against the remonstrance of the majority of the school patrons of said district No. 2. Neither could the board, under the act of 1903, *supra,* put in issue the question of emergency or necessity for the joint school, and, considered as a whole, the return falls far short of showing a legal excuse for its refusal to grant the trustee the authority requested.

But appellant contends that the act of 1903, *supra,* is in violation of §19, article 4, of the state Constitution, which provides that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." The title of the act in question is: "An act concerning the establishment of new school districts, and the erection and maintenance of schoolhouses therein, and declaring an emergency." Except the emergency provision the section set out comprises the whole act of 1903.

It is argued that the title is vague and misleading, that it gives notice of proposed legislation on the general subject of establishing new school districts, and the construction of schoolhouses, while the body of the act limits the operation of the law to the creation of new joint districts from adjoining school districts in adjacent townships. It is not questioned that the title is broad enough to embrace the subject legislated upon. The complaint is that the principal force of the act is a restriction upon the power of advisory boards to determine the emergency for the building of schoolhouses, and it is too broad reasonably to apprise the citizen and legislator of the narrow and concealed limits fixed by the act. Such an objection is untenable. The restriction complained of is incidental; not controlling. The law affects the authority of advisory boards only as to the building of schoolhouses of a particular class. There is nothing more common

in legislation than that a new law, whether as an amendatory or as an independent act, will, in one respect or another, affect some provision of existing laws. Yet such a result will not be held as condemning the title of the new law, if the particular result may reasonably be apprehended within the terms of the title. The generally recognized rule of construction on questions of this kind is well expressed in the text of 26 Am. and Eng. Ency. Law (2d ed.), 582, thus: "The constitutional requirement as to the title is that it shall adequately express the subject of the act, not that it shall not express more; and where the title fairly suggests all the provisions of the act, it is not invalid merely because the body of the act is narrower than it might have been under such a title." The title before us announces: "An act concerning * * * the erection and maintenance of school-houses." This distinctly suggests the expenditure of township funds and the authorization of trustees to make such expenditures by authority of law. Under the rules of construction as declared in *State* v. *Bailey* (1901), 157 Ind. 324, 49 L. R. A. 435, and a great many other cases from this court of like tenor, we think the title in question is sufficient.

It is also claimed that the act is obnoxious to §21, article 4, of the Constitution, which declares that no act shall be amended by reference to its title, but the section amended shall be set forth and published at full length.

The act of 1903, *supra,* does not purport to be amendatory of any statute. Both by title and by terms it professes to be an independent act complete within itself. Its reference to other statutes, and particularly to §9595, *supra,* is manifestly not for the purpose of amendment, but to identify and qualify the facts that should invoke its provisions. In reviewing the doctrine relating to reference statutes of this kind, it is said in 26 Am. and Eng. Ency. Law (2d ed.), 711: "It is generally held that if an act is complete in itself, it may adopt rules of construction or modes of procedure for

carrying out its provisions by reference to other statutes, whether or not this provision is contained in the constitution; and such adoption by reference may include refer-ences to local as well as general laws." See, also, many collated cases.

The practice of referring to other statutes for the purpose of indicating the particular facts or procedure upon which the law shall operate is quite common in this State. For instance, in the law concerning the construction of free gravel roads on county boundary lines (Acts 1899, p. 468, §§6-9, §§6919-6922 Burns 1901) there are five such references, and perhaps not a chapter of our statutory laws may be found that is free from them. Even if one of the statutes referred to in the act in question should be repealed, the repealed law would remain a document, and might still be examined for the purpose of determining the sense of the living statute. *Commonwealth* v. *Melville* (1894), 160 Mass. 307, 35 N. E. 863; the act of 1903, *supra,* involves the power of advisory boards over the funds necessary to build joint schoolhouses, and may have the effect of modifying or of amending by implication section six of the advisory board law (§9595 Burns 1908, Acts 1901, p. 415, §1). Still as held in *State* v. *Gerhardt* (1896), 145 Ind. 439, 452, 33 L. R. A. 313, that alone cannot be said to bring the act within the mischief which §21, article 4, of the Constitution was designed to prohibit. See, also, *Board, etc.,* v. *Lindeman* (1905), 165 Ind. 186.

It is also contended that the act of March 6, 1877 (Acts 1877, p. 125, §6617 Burns 1908, §4512 R. S. 1881), referred to in the act of 1903, was, by implication, repealed by the act of May 15, 1901 (Acts 1901, p. 53, §1-3, §§6620-6622 Burns 1908), and that the act of 1903, being intended as supplementary to the repealed act of 1877, is void. There is much similarity in the two acts, yet important differences in both the titles and the bodies of the acts exist; but, believing, as we have indicated, that the act of 1903 is neither amendatory

nor supplemental to either act, we are not called upon and do not decide whether the latter repealed the former. The rule that governs in questions of implied repeals is well stated by Mitchell, J., in *State* v. *Wells* (1887), 112 Ind. 237.

We are of opinion that the complaint contains all necessary allegations to show a duty on the part of the Advisory Board of Harrison Township to meet and perform the official act commanded, that the return to the alternative writ does not excuse performance, and that the judgment should be affirmed.

Judgment affirmed.