389 S.C. 540 (2010)
698 S.E.2d 841
Bruce L. McGEE, Respondent,
v.
SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES, Appellant.
No. 4720.
Court of Appeals of South Carolina.
Heard April 14, 2010.
Decided August 4, 2010.
*541 Frank L. Valenta, Jr., Philip S. Porter, and Linda A. Grice, S.C. Department of Motor Vehicles, of Blythewood, for Appellant.
D. Malloy McEachin, Jr., of Florence, for Respondent.
WILLIAMS, J.

INTRODUCTION
The South Carolina Department of Motor Vehicles (the Department) appeals the decision of the Administrative Law Court (the ALC). The Department contends the ALC erred in reversing Bruce McGee's (McGee) suspension under section 56-10-530 of the South Carolina Code. We reverse.

FACTS
On March 14, 2007, Michael Jackson (Jackson) operated an uninsured 1968 Chevrolet truck (the truck) with a 2007 South Carolina registered license plate. The truck was involved in an accident at the intersection of U.S. Hwy 52 and S-21-488 in or near Lake City, South Carolina. McGee, the owner of the truck, was in Las Vegas, Nevada, at the time of the accident. Jackson's insurance carrier settled all claims of property damage and bodily injury.
*542 On September 24, 2007, the Department sent McGee a Notice of Suspension of his driving and registration privileges pursuant to section 56-10-530 of the South Carolina Code (Supp.2009).[1] McGee requested a hearing with the Office of Motor Vehicle Hearings to contest his suspension.
At the hearing, McGee testified Jackson was unauthorized to operate the truck, and he was unaware that Jackson was going to drive the truck. McGee also claimed he was going to use the truck for replacement parts because it was inoperable. Jackson substantiated McGee's testimony when he admitted he was not authorized to operate the truck. The hearing officer found McGee was unable to produce liability insurance coverage on the truck on the date of the accident, and the truck was not registered pursuant to section 56-10-510 of the South Carolina Code (Supp.2009).[2] Consequently, the hearing officer concluded McGee's suspension should be enforced.
McGee subsequently appealed to the ALC. In reversing the decision of the Office of Motor Vehicle Hearings, the ALC found McGee did not operate or permit Jackson to operate the truck. The ALC concluded the plain language of section 56-10-510 does not apply to owners who do not operate their vehicle nor give permission to others to operate their vehicle. Thus, the ALC held McGee's suspension was not warranted pursuant to section 56-10-530. This appeal followed.

STANDARD OF REVIEW
This court's scope of review for appeals from the ALC is set forth in section 1-23-610(B) of the South Carolina Code (Supp.2009). That section provides:
The review of the administrative law judge's order must be confined to the record. The court may not substitute its judgment for the judgment of the administrative law judge *543 as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) affected by other error of law;
(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

LAW/ANALYSIS
The Department contends the ALC erred in failing to uphold McGee's suspension pursuant to section 56-10-530. We agree.
The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. Hodges v. Rainey, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The court will give words their plain and ordinary meaning and will not resort to a subtle or forced construction that would limit or expand the statute's operation. Harris v. Anderson County Sheriff's Office, 381 S.C. 357, 362, 673 S.E.2d 423, 425 (2009). "A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." New York Times Co. v. Spartanburg County School Dist. No. 7, 374 S.C. 307, 310-311, 649 S.E.2d 28, 30 (2007) (citation omitted). In interpreting a statute, the language of the statute must be read in a sense that harmonizes with its subject matter and accords with its general purpose. Hitachi Data Systems Corp. v. Leatherman, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).
Section 56-10-530 provides in pertinent part:
When it appears to the director from the records of his office that an uninsured motor vehicle as defined in Section 56-9-20, subject to registration in the State, is involved in a reportable accident in the State resulting in death, injury, or property damage with respect to which motor vehicle the *544 owner thereof has not paid the uninsured motor vehicle fee as prescribed in Section 56-10-510, the director shall, in addition to enforcing the applicable provisions of Section 56-10-10, et seq. of this chapter, suspend such owner's driver's license and all of his license plates and registration certificates until such person has complied with those provisions of law and has paid to the director of the Department of Motor Vehicles a reinstatement fee as provided by Section 56-10-510, to be disposed of as provided by Section 56-10-550, with respect to the motor vehicle involved in the accident and furnishes proof of future financial responsibility in the manner prescribed in Section 56-9-350, et seq. However, no order of suspension required by this section must become effective until the director has offered the person an opportunity for a contested case hearing before the Office of Motor Vehicle Hearings to show cause why the order should not be enforced. Notice of the opportunity for a contested case hearing must be included in the order of suspension. Notice of such suspension shall be made in the form provided for in Section 56-1-465.
The Department's records reflect McGee's truck was a registered and plated uninsured motor vehicle that was involved in an accident resulting in property damage. However, McGee argues he did not intend to operate or permit operation of the truck; and, therefore the uninsured motor vehicle fee statute is not applicable.
Section 56-10-510 states, in pertinent part:
In addition to any other fees prescribed by law, every person registering an uninsured motor vehicle, as defined in Section 56-9-20, at the time of registering or reregistering the uninsured vehicle, shall pay a fee of five hundred and fifty dollars. . . . The application for registering an uninsured vehicle must have the following statements printed on or attached to the first page of the form, boldface, twelve point type: "THIS $550 FEE IS NOT AN INSURANCE PREMIUM AND YOU ARE NOT PURCHASING ANY INSURANCE BY PAYING THIS FEE. THIS $550 UNINSURED MOTORIST FEE IS FOR THE PRIVILEGE TO DRIVE AND OPERATE AN UNINSURED MOTOR VEHICLE ON THE SOUTH CAROLINA ROADS."
(emphasis in original).
*545 Section 56-10-510 suggests the uninsured motor vehicle fee only applies to an owner who operates an uninsured motor vehicle on South Carolina roads. However, we conclude a plain reading of the statute would effectuate an absurd result because this State requires either insurance coverage or payment of the uninsured motor vehicle fee for all registered motor vehicles.
In Shores v. Weaver, 315 S.C. 347, 352, 433 S.E.2d 913, 915 (Ct.App.1993) this court stated, "[The General Assembly] decided that all vehicles registered and licensed in this State must be insured to the minimal coverage and limits required by the Motor Vehicle Financial Responsibility Act."[3] Thus, under Shores, South Carolina required mandatory liability insurance for registered and licensed motor vehicles.
In Cowan v. Allstate Ins. Co., 351 S.C. 626, 632-33, 571 S.E.2d 715, 718 (Ct.App.2002), this court found section 56-10-510 superseded Shores. As a result, South Carolina is no longer a mandatory insurance state because section 56-10-510 allows a person to pay an uninsured motor vehicle fee when registering with the Department of Motor Vehicles.[4]
McGee's argument would discourage similarly-situated individuals from obtaining liability insurance or paying the uninsured motor vehicle fee while simultaneously owning a registered and plated uninsured motor vehicle. We believe this result contravenes legislative intent because South Carolina requires liability insurance, or in the alternative, payment of the uninsured motor vehicle fee for a registered motor vehicle. See S.C.Code Ann. § 56-10-10 (2006) (stating every owner of a motor vehicle required to be registered in this State shall maintain the security required by Section 56-10-20 throughout the effective registration period); S.C.Code Ann. § 56-10-20 (2006) (generally stating the security under this chapter *546 must be for at least the minimum coverages and the director may approve and accept another form of security in lieu of such a liability insurance policy if he finds that such other form of security is adequate to provide and does in fact provide the benefits required by this chapter); S.C.Code Ann. § 56-10-510 (stating every person registering or reregistering an uninsured motor vehicle shall pay an uninsured motor vehicle fee of five hundred and fifty dollars). Moreover, pursuant to section 56-10-240(A) of the South Carolina Code (Supp.2006) McGee was obligated to surrender his license plate and registration to the Department after the truck became uninsured. See S.C.Code Ann. § 56-10-240(A) (stating a motor vehicle owner shall immediately obtain insurance or surrender his license plate and registration certificate within five days after the effective date of cancellation or expiration of liability insurance if the motor vehicle is or becomes an uninsured motor vehicle during the period for which it is licensed).
Therefore, we conclude an owner who fails to pay the uninsured motor vehicle fee while maintaining a registered and licensed uninsured motor vehicle is subject to suspension pursuant to section 56-10-530.

CONCLUSION
Accordingly, the Administrative law court's decision is
REVERSED.
SHORT and LOCKEMY, JJ., concur.
NOTES
[1] Section 56-10-530 authorizes the Department to suspend an owner's driver's license and all of his license plates and registration certificates if the Department's records reflect that the owner's uninsured motor vehicle is involved in a reportable accident resulting in death, injury, or property damage and the uninsured motor vehicle fee is not paid.
[2] Section 56-10-510 provides at the time of registration or reregistration an uninsured motor vehicle, every person must pay an uninsured motor vehicle fee of $550.
[3] Shores was superseded by statute as stated in Cowan, 351 S.C. 626, 571 S.E.2d 715 (Ct.App.2002).
[4] Our Supreme Court subsequently reversed the Court of Appeals' decision in Cowan and concluded section 38-77-142(B) did not impact the holding of Shores. See Cowan v. Allstate Ins. Co., 357 S.C. 625, 594 S.E.2d 275 (2004). Despite our Supreme Court's reversal, the Court of Appeals' statement regarding the transformation of South Carolina from a mandatory insurance state to a non-mandatory insurance state is a correct pronouncement of the law.